Mary L. STONE, For Herself and
All Others Similarly Situated,
Appellant,

v.

The PIRELLI ARMSTRONG TIRE
CORP., and United Rubber Workers of
America, Local 164, Appellees.

No. 91–1523.

Supreme Court of Iowa.

March 24, 1993.

Barbara A. Drews and John C. Barrett of Barrett Law Offices, Des Moines, for appellant.

James R. Swanger, Suzanne J. Kruse and Daniel L. Stockdale of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellee Pirelli Armstrong.

Angela A. Swanson of Morain, Burlingame, Pugh, Peyton & Koop, West Des Moines, for appellee Local 164.

Considered by LARSON, P.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

This is an appeal from a district court order denying certification of a class action. The named plaintiff on behalf of herself and all others similarly situated sued her employer and her union for alleged sexual harassment on the job. In denying certification the district court concluded that the plaintiff could not "fairly and adequately represent and protect the interests of the class."

In her appeal the named plaintiff mounts a two-part abuse of discretion challenge. First, she alleges that there is a mandatory finding of fact requirement under the Iowa Rules of Civil Procedure governing class actions. She asserts the district court abused its discretion when it failed to make those findings of fact. Second, she alleges the district court abused its discretion in refusing to certify the class based upon her alleged inability to fairly and adequately represent and protect the interests of the class.

Finding no abuse of discretion on either issue, we affirm.

I. *Background Facts.*

Mary L. Stone was employed by the Pirelli Armstrong Tire Corporation from November 18, 1980, until August 4, 1989. During this time frame she worked as an hourly production worker in a variety of jobs. She was also a member of Local 164 of the United Rubber Workers of America and was covered by a collective bargaining agreement.

In February 1989 Stone allegedly became the target of escalating sexual harassment by a fellow union member. She complained to the president of Local 164. He failed to file a grievance on her behalf. Six months later, on August 4, 1989, Stone gave up her job and moved to Virginia.

II. *Background Proceedings.*

The day before she left her employment, Stone filed against Pirelli and Local 164 an administrative charge of sexual discrimination in employment for herself and "[o]n behalf of all others similarly situated" with the Iowa civil rights commission. *See* Iowa Code § 601A.15(1) (1987). The commission issued Stone a right-to-sue letter on April 30, 1990. *See* Iowa Code § 601A.16(2). This letter, of course, authorized Stone to bring a class action in district court against Pirelli and Local 164 based on alleged violations of Iowa Code chapter 601A.

On June 14, 1990, Stone filed a class action suit in district court against Pirelli and Local 164. She alleged sexual harassment arising from a sexually hostile work environment grounded in Iowa Code chapter 601A. The petition defined the class as "all women who are now, or were at any time from February 1, 1989, to the present, employed by Pirelli ... in a position covered by the collective bargaining unit agreement." Stone also designated as class members "all women who at any time in the future may be employed by defendant Pirelli ... at the plant in Des Moines."

The petition alleged that throughout Stone's employment she and members of the class were subjected to "repeated acts of sexual harassment." The petition alleged that male co-workers and male Pirelli managers themselves (1) made lewd, obscene, and suggestive gestures; (2) distributed and displayed lewd, obscene, and suggestive magazines, photographs, pin-up pictures, drawings, and words which were lewd, obscene, sexually suggestive, and demeaning of women; (3) made lewd, obscene, and sexually suggestive oral and written remarks to, about, and relating to the plaintiff and class members; and (4) engaged in unwanted physical touching of a lewd, obscene, and suggestive character.

Stone further alleged in the petition that she complained to both defendants about these conditions to no avail. Finally—she alleged—these conditions forced her to resign her job, which—in effect—resulted in a constructive discharge.

The petition sought (1) compensatory damages for Stone and each member of the class; (2) a preliminary and permanent injunction against Pirelli forbidding it to maintain or allow its employees to maintain a sexually discriminatory environment; (3) a permanent injunction ordering Pirelli to reinstate Stone to her job with back wages, benefits, seniority, and leave allowances restored to her as if she had not been constructively discharged; (4) a permanent injunction ordering Local 164 to reinstate Stone as a member of the bargaining unit; (5) attorney fees and costs incurred; and (6) for such other relief as may appear just and necessary.

Both defendants filed answers (1) denying the class action allegation, and (2) alleging multiple affirmative defenses. The defendants also resisted Stone's application for certification of the case as a class action. She appeals from the district court's order denying the application.

### III. Scope of Review.

■ Our review is limited because the district court enjoys broad discretion in the certification of class action lawsuits. We must determine whether that discretion has been abused. *Vignaroli v. Blue Cross*, 360 N.W.2d 741, 743 (Iowa 1985). Reversal is appropriate only if the record reveals that the district court's decision was based on clearly untenable or unreasonable grounds. *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989).

### IV. Whether There is a Mandatory Fact Finding Requirement Under the Iowa Rules of Civil Procedure Governing Class Actions.

Iowa Rule of Civil Procedure 42.1 permits the commencement of a class action if there is a common question of law or fact to class persons so numerous that joinder of all persons is impracticable. Iowa Rule of Civil Procedure 42.2 sets out the prerequisites for certifying a class action. The pertinent part of the rule provides:

The court may certify an action as a class action, if it finds that (1) the requirements of R.C.P. 42.1 [numerosity and commonality] have been satisfied, (2) *a class action should be permitted for the fair and efficient adjudication of the controversy*, and (3) the representative parties fairly and adequately will protect the interests of the class.

Iowa R.Civ.P. 42.2(b) (emphasis added).

There are a number of criteria the district court should consider in determining the second prerequisite of Rule 42.2(b): whether a class action should be permitted for the fair and efficient adjudication of the controversy. These criteria are set out in Iowa Rule of Civil Procedure 42.3(a). We

listed all of them in a recent case. *See Amana Refrigeration, Inc.*, 435 N.W.2d at 369. These criteria center chiefly on two broad considerations: "achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants." *Vignaroli,* 360 N.W.2d at 744.

■ Iowa Rule of Civil Procedure 42.4 governs orders on certification. The pertinent part of that rule provides that the order refusing to certify a class "shall state the reasons for the court's ruling and *its findings on the facts listed in R.C.P. 42.3(a)."* (Emphasis added.) It is this part of the rule that Stone asserts the district court did not follow. She thinks the language "shall state ... its findings on the facts listed in R.C.P. 42.3(a)" required the district court to make findings on each of the long list of criteria in Rule 42.3(a).

Contrary to Stone's thinking, we believe the district court could have decided the class action certification issue on any one of the prerequisites in Rule 42.2(b). The prerequisites again are these:

> (1) the requirements of R.C.P. 42.1 [numerosity and commonality] have been satisfied, (2) a class action should be permitted for the fair and efficient adjudication of the controversy, and (3) the representative parties fairly and adequately will protect the interests of the class.

Iowa R.Civ.P. 42.2(b). We say this because the representative party or named plaintiff has the burden of proving all prerequisites. *Vignaroli,* 360 N.W.2d at 744. A failure of proof on any one of the prerequisites is fatal to a class action certification. *Cf. Folding Cartons, Inc. v. American Can Co.,* 79 F.R.D. 698, 700 n. 2 (N.D.Ill.1978) (Mem.) (class action status under federal rule 23 was denied solely on basis that plaintiff could not fairly represent and adequately protect the interests of the class; court recognized it was not necessary to reach a decision on any of the other six prerequisites to maintenance of a class action under the federal rule).

Here the district court focused on the last prerequisite of Rule 42.2(b): whether the representative parties fairly and adequately will protect the interests of the class. The district court did not abuse its discretion in doing so.

That leads us to the next issue.

V. *Whether There Is Any Reasonable Basis in the Record to Support the District Court's Finding That Stone Would Not Fairly and Adequately Protect the Interests of The Class.*

The rule criteria on this issue are found in Iowa Rule of Civil Procedure 42.3(b). In determining whether the representative parties will fairly and adequately protect the interests of the class, the district court must make three findings. The court must find that

> (1) the attorney for the representative parties will adequately represent the interests of the class, (2) the representative parties do not have a conflict of interest in the maintenance of the class action, and (3) the representative parties have or can acquire adequate financial resources ... to assure that the interests of the class will not be harmed.

Iowa R.Civ.P. 42.3(b). We assume the district court found that Stone's attorneys would adequately represent the interests of the class. So we focus on the remaining two criteria in Rule 42.3(b): whether Stone has a conflict of interest in the maintenance of the class action and whether Stone has or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

We agree with the assessment of one court that "adequacy of representation is perhaps the most significant of the prerequisites to a determination of class certification." *Folding Cartons, Inc.,* 79 F.R.D. at 701. The reason is because

> [a]dequacy of representation is the key to the integrity of class action litigation, not only in pragmatic terms of the efficiency and thoroughness of the proceedings, but far more importantly in relation to the fair and just resolution of the dispute. Because the individual right to a day in court is delegated to the named

plaintiff in a class action the court must be especially sensitive to insuring that the due process rights of the absent parties are protected, since they will be bound by any final judgment. Any infirmities of representation will thus result in a defect of constitutional dimensions. If the due process rights of all the parties are not guaranteed, any settlement or judgment is vulnerable to collateral attack.

*Id.* (citations omitted).

■ On the issue of adequate representation, each case must be judged on its own facts. Resolution of the issue depends on all the circumstances presented. *Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 446 (E.D.Pa.1975) (Mem.).

When a court denies class action certification on the basis of inadequate representation there are usually special circumstances or a combination of factors involved. 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.33, at 3–158 (3d ed. 1992). This is no less true in this case as witnessed by the district court's ruling in which it gave these succinct reasons why Stone would not fairly and adequately protect the interests of the class:

> Fifteen present Pirelli ... women employees testified that they did not want to be a part of this lawsuit, nor have the plaintiff represent them in the event they became a part of the class. Further, some of these witnesses contradicted some of the testimony the plaintiff gave concerning complaints that they may have made. In addition, Mary Stone is not now employed by Pirelli.... Further, her residence now is in the state of Virginia. In addition, her finances seem limited by reason of the fact that while several thousand dollars of expenses have been incurred to the time of our hearing, she had only been able to pay the filing fee. More disturbing to the court, however, is the admission by the plaintiff that in a divorce action she obtained her medical records from her physician and destroyed them so they could not be a part of her dissolution of marriage action.

■ The stature of the purported class representative is a legitimate area of inquiry. *Folding Cartons, Inc.,* 79 F.R.D. at 703; *Amos v. Board of Sch. Directors,* 408 F.Supp. 765, 773 (E.D.Wis.1976). The fact that fifteen of the present forty-five women employees of Pirelli do not want Stone to represent them is indicative of a lack of confidence in Stone and a lack of community of interest. *See Folding Cartons, Inc.,* 79 F.R.D. at 704.

■ Closely tied to stature is credibility, another important consideration on the issue of adequate representation. A class representative's lack of credibility can render him or her an inadequate class representative. *Dubin v. Miller,* 132 F.R.D. 269, 272 (D.Colo.1990) (Mem.); *Kline v. Wolf,* 88 F.R.D. 696, 698–99 (S.D.N.Y.1981); *Folding Cartons, Inc.,* 79 F.R.D. at 703 (finding by trial court in separate action that president of corporation had participated in fraudulent scheme of selling substandard boxes was indication of inadequacy); *Weisman v. Darneille,* 78 F.R.D. 671, 673 (S.D.N.Y.1978) (plaintiff who had prior felony conviction was inadequate class representative). This can happen when evidence on such credibility is so damaging that a fact finder might reasonably focus on the representative's credibility to the detriment of the absent class members' claims. *Dubin,* 132 F.R.D. at 272.

■ Stone admitted that, several years before this case, she destroyed evidence unfavorable to her in a divorce proceeding to which she was a party. The bizarre manner in which she did so compounded her deceit. She went to her doctor's office, asked to see her medical records, and while the office clerk was not looking, ripped two pages from her files. She then ran out of the office with the records.

This is a form of deceit that is highly relevant on any litigant's ability to convince a fact finder that the litigant's claim or defense has merit. The district court here could rightfully be concerned that this evidence is so damaging that it might divert

the fact finder's focus from the important issues.

Many of the women employees who testified contradicted Stone's allegations of plant-wide public display of offensive sexually explicit material. This is an important issue in the class action suit. This conflict in testimony represents the kind of conflict we have said would stand in the way of a class action. *See Vignaroli*, 360 N.W.2d at 746 ("Not every disagreement between a representative and other class members will stand in the way of a class action suit. The conflict must be fundamental, going to the specific issues and controversies.").

■ A significant part of the relief Stone seeks on behalf of the purported class is injunctive relief: a preliminary and permanent injunction against Pirelli forbidding it to maintain a sexually discriminatory work environment. Stone has no direct interest in obtaining such relief on behalf of the purported class, nor does she have standing to do so. This is because she is no longer employed at Pirelli. Her interest is in recovering monetary damages for the discrimination she allegedly suffered. The district court could properly consider this conflict in determining that Stone would not be an adequate class representative. *See Mixon v. Gray Drug Stores, Inc.*, 81 F.R.D. 413, 414 (N.D. Ohio 1978) (estate of deceased employment discrimination complainant could not be substituted as adequate representative of class described in complaint that sought damages and injunctive relief, because estate's interest was solely in recovering damages and it had no direct interest in correction of alleged unlawful employment practices).

■ Our rule as to adequate representation requires the district court to consider whether the representative party has or can acquire the financial resources to protect the interests of the class. *See* Iowa R.Civ.P. 42.3(b). The record supports the district court's finding that Stone's resources are limited. By the time of the hearing, several thousand dollars in expenses had been incurred. Yet Stone had only paid the filing fee, and she had made no effort to pay other expenses though she

had agreed to do so. Her income has dropped significantly since she left Pirelli. She has very little available disposable net income. Unlike the representative parties in *Vignaroli*, she does not have a home or any other substantial real asset against which to borrow. *Vignaroli*, 360 N.W.2d at 747. Nor does she have any liquid assets. She has accumulated debts.

Other than a bare promise, Stone has made no showing as to how she will reimburse her attorneys for litigation expense advancements if she loses. On this point, one court has noted that

[i]n view of the binding effect on absent class members, courts ought to be especially chary about certifying inadequately resourced plaintiffs as class representatives. Plaintiffs must be able adequately (1) to fund discovery and expert testimony, (2) to resist inadequate settlements that plaintiffs in more exigent circumstances would feel compelled to accept, and (3) to fund ... notices to class members....

    ....

Other courts are increasingly wary of having class representatives before them who, because of their indigency, are impervious to, and therefore unrestrained by, the prospect of being liable for costs. *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 510 (E.D.Ark. 1980) (citations omitted).

Given Stone's present financial condition, there is little prospect that she could pay the expenses of a class action suit if she lost. This prospect raises the specter that Stone's attorneys may—as a practical matter—end up acquiring a financial interest in the litigation. This, of course, would be contrary to our Iowa Code of Professional Responsibility for Lawyers. Our ethical rules under this code allow an attorney to advance litigation expenses provided that the client remains ultimately liable for these expenses. *See* DR 5–103(B). The purpose of the rule is to prevent an attorney from acquiring a financial interest in the litigation that might interfere with the attorney's exercise of independent judgment. This is especially true when it

comes to deciding whether to settle the case. As one court aptly put it,

[i]f the client is not financially responsible, the attorneys have free rein over the prosecution of the action. This is tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel.

*In re Mid–Atlantic Toyota Antitrust Litig.,* 93 F.R.D. 485, 490 (D.Md.1982) (Mem.).

Compounding Stone's financial inability is her out of state residence. She lives in Virginia. This means she would have to commute a long distance at much expense to prosecute this class action.

Any one of these factors—standing alone—would perhaps not be enough to disqualify Stone from being an adequate class representative. Taken together, however, these factors provide a reasonable basis for the district court's conclusion that Stone is not an adequate class representative.

## VI. *Disposition.*

The district court could properly focus on any one prerequisite of our class action rules in ruling on Stone's application for class action certification. In doing so here, the district court had adequate reason to support its conclusion that Stone would not fairly and adequately protect the interests of the class. For these reasons, the district court did not abuse its discretion in denying class action certification.

**AFFIRMED.**