Elizabeth **BIRKHOFER, By and Through Her Guardian and Conservator, Michael V. JOHANNSEN, Director of Muscatine Community Services, Appellee,**

v.

**James Birkhofer, Joni Birkhofer, and First National Bank of Muscatine, Defendants,**

**and Marilyn BRAMMEIER, Appellant.**

No. 97–2053.

Supreme Court of Iowa.

April 26, 2000.

Rehearing Denied May 31, 2000.*

---

* NEUMAN, J., taking no part.

Dennis A. Bjorklund, Coralville, for appellant.

John E. Wunder, Muscatine, for appellee.

LAVORATO, Justice.

Elizabeth Birkhofer conveyed a farm to her son, James Birkhofer. Elizabeth's guardian and conservator brought an action to void the conveyance. The suit named James, his wife, Joni, and a bank that held a mortgage against the farm. Elizabeth's daughter, Marilyn Brammeier, objected to a settlement agreement the parties had reached. The district court ruled Marilyn had no standing to object to the agreement. We agree and affirm.

On May 5, 1993, Elizabeth executed a will, leaving her entire estate to her son, James. She left nothing to her other two children, Judy Nesbit and Marilyn. On November 30, 1993, Elizabeth conveyed to James a 250–acre farm without consideration.

In July 1996 the University of Iowa Hospitals and Clinics diagnosed Elizabeth with Alzheimer's disease. On July 23 Marilyn filed a petition for involuntary appointment of a guardian and conservator for Elizabeth and asked that she be appointed as Elizabeth's guardian and conservator. James also filed a petition to be appointed guardian and conservator.

On October 18 the guardian ad litem appointed for Elizabeth filed a report in which the guardian ad litem rejected both Marilyn and James as guardian and conservator. The guardian ad litem rejected both children because they had been found responsible for the adult abuse of their mother for failing to provide adequate care for her. Additionally, the guardian ad litem had concerns about the management of Elizabeth's financial affairs by family members. The guardian ad litem recommended Michael V. Johannsen of Muscatine County Community Services be appointed as guardian and conservator. The court appointed Johannsen as guardian and conservator on October 22.

On February 27, 1997, Johannsen filed a lawsuit against James and Joni to void the conveyance of the 250–acre farm to James. Johannsen filed the lawsuit as an ordinary action apart from the probate proceeding. The suit also named the First National Bank of Muscatine because it held a mortgage against the farm as security for a loan the bank had made to James.

On September 3 Johannsen filed an application for the approval of a proposed settlement between Elizabeth and the defendants. The proposed settlement provided that Elizabeth would dismiss her lawsuit with prejudice in exchange for James and his wife, Joni, agreeing "to accept financial responsibility for Elizabeth's nursing home care, if necessary, until such time as she qualifies for Medicare/Medicaid." James and Joni also agreed to pay Elizabeth's attorney's fees. The bank agreed to loan money to James and Joni to pay for Elizabeth's nursing care so long as such loans were secured by a mortgage against the farm. The proposed agreement explained why the agreement was in Elizabeth's best interest.

On September 12 Marilyn filed a resistance to the application for approval of the settlement agreement. She did so even though she was not a party to the action and without filing a petition to intervene. See Iowa Rs. Civ. P. 2 (providing that, subject to certain exceptions not relevant here, every action must be prosecuted in the name of the real party in interest); 75 (providing that party who has interest in subject of litigation or success of either party to lawsuit may intervene at any time before trial begins); 76 (requiring intervenor to file a petition against whom he asserts a right).

Later, the district court ordered Marilyn and the parties to the suit to file briefs regarding whether Marilyn had standing to contest the proposed settlement agreement.

Marilyn filed a brief in which she alleged she had standing to challenge the settlement agreement because she was affected by it in three ways. First, under Iowa Code chapter 633, she had a right to inherit through her mother. Second, under the "Iowa Family Responsibility Act," she is responsible for any medical debts associated with her mother. She claimed that the settlement agreement fixing this responsibility in James and Joni did not preclude her from being responsible if they default-

ed. Last, under Iowa Code chapter 252 and Title XIX, she may be responsible for nursing care expenses and other expenses relating to her mother and her mother's guardianship and conservatorship.

In their brief, James and Joni contended that Marilyn had no standing to contest the proposed settlement agreement. In support of their contention, James and Joni argued that whatever statutory right Marilyn might have had was abrogated by Elizabeth's will disinheriting her. Additionally, they argued that there was no Iowa Family Responsibility Act that imposed any liability upon Marilyn for Elizabeth's medical expenses. Finally, they argued that Marilyn would not be statutorily responsible for Elizabeth's medical expenses under any other statute, including Iowa Code chapter 252 and Title XIX. They concluded that Marilyn's interest in this matter was too contingent to confer standing upon her.

Elizabeth filed a brief, also contending that Marilyn had no standing to contest the proposed settlement agreement. Elizabeth essentially adopted all of the reasons that James and Joni offered in refuting Marilyn's claim that she had standing. The district court agreed with James and Joni and Elizabeth and found that Marilyn had no standing to contest the settlement agreement. Additionally, the court approved the agreement.

On appeal, Marilyn raises a number of issues, only one of which she has preserved for our review: whether she has standing to contest the settlement agreement.

I. Neither Elizabeth nor James and Joni opposed Marilyn's right to contest the settlement on the grounds that she (1) was not a party to the lawsuit or (2) had failed to file a petition to intervene. We could probably uphold the district court's ruling on either ground. However, because there was no objection to the manner in which the district court proceeded, we consider the standing issue.

II. "Standing to sue" has been defined to mean that a party must have "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." Black's Law Dictionary 1405 (6th ed.1990). Our test for standing is that the complaining party must (1) have a specific, personal, and legal interest in the litigation and (2) be injuriously affected. *In re Marriage of Mitchell,* 531 N.W.2d 132, 134 (Iowa 1995); *City of Dubuque v. Iowa Trust,* 519 N.W.2d 786, 789 (Iowa 1994). Our review is for correction of errors at law. *See City of Dubuque,* 519 N.W.2d at 789.

We agree with the district court that Marilyn has no legal interest in the litigation that will be injuriously affected. Contrary to Marilyn's contention, there is no law that makes her legally liable for her mother's medical expenses. *See In re J.R.,* 315 N.W.2d 750, 752 (Iowa 1982) (" 'One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree therein.' ") (quoting 59 Am.Jur.2d *Parties* § 138, at 567 (1971)).

Additionally, Marilyn has only a statutory intestate interest in her mother's estate that can be eliminated by will or transfer. As the district court concluded, the mere intestate claim of a daughter in the potential estate of her living mother is too contingent to constitute a legal interest sufficient to establish standing. *See In re Willcockson,* 368 N.W.2d 198, 201, 203 (Iowa App.1985) (holding that beneficiary of trust did not show sufficient interest to have standing to challenge termination of marital trust because beneficiary's mother could exercise her general power of appointment either in favor of or against the beneficiary's interest); *see also In re Estate of DeVoss,* 474 N.W.2d 539, 542 (Iowa 1991) (upholding decision denying disinherited heirs' right to intervene in declaratory judgment action to determine validity of deeds signed by decedent because their interests were contingent); *In re Will of Fallon,* 107 Iowa 120, 122, 77 N.W. 575 575–76 (1898) (rejecting as too contingent claim of mother of a living heir that mother had standing to contest will based on the fact that she would inherit from her child if the child died).

For all of these reasons, we conclude Marilyn has failed to establish standing to contest the proposed settlement. The district court did not err in concluding otherwise.

**AFFIRMED.**